**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CYNTHIA E. MOORE,         )
         )
      Plaintiff,         )
         )
v.         )     Case No. 4:12CV02154 AGF
         )
ERIC H. HOLDER, JR., ATTORNEY         )
GENERAL OF THE UNITED STATES,         )
         )
      Defendant.         )

## PLAINTIFF'S PRE-TRIAL MEMORANDUM

Plaintiff Cynthia Moore brought this lawsuit against Defendant alleging that it denied her a promotion from her position as a Bankruptcy Analyst for the U.S. Trustee Program to the position of Senior Bankruptcy Analyst on account of her race, African-American, in violation of Title VII.

## I.  LIABILITY

In 1972 Congress extended Title VII so that it protects not only employees of private companies from discrimination but also employees of the federal government.  Section 717(a) set forth the basic anti-discrimination standard:  "all personnel actions affecting employees or applicants for employment [of government agencies and departments] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. §2000e-16(a).[1]

---

[1] Title VII requires that the head of the agency be named as the defendant in a federal sector case.  42 U.S.C. §2000e-16a.  The U.S. Trustee Program is part of the U.S. Department of Justice and, as a result, the named defendant in this case is the U.S. Attorney General.

The familiar "pretext" methodology applies in Title VII cases such as this one. Under this approach, the employee has the initial burden of establishing a prima facie case of race discrimination, the employer must then articulate a non-discriminatory reason for the challenged employment decision, and the employee must then show that the employer's reason is not trustworthy -- that it is "unworthy of credence." **Texas Dept. of Comm. Affairs v. Burdine**, 450 U.S. 248, 256 (1981). Evidence that the employer has offered a false reason for its decision is sufficient by itself (with rare exceptions not present here) to allow a jury to infer race discrimination. **Reeves v. Sanderson Plumbing**, 120 S.Ct. 2097, 2108-09 (2000); **MacDissi v. Valmont Indus.**, 856 F.2d 1054, 1059 (8th Cir. 1988); Manual of Model Jury Instructions for the Eighth Circuit, No. 5.20 (2013).

The burden of establishing a prima facie case is "not onerous." **Burdine**, 450 U.S. at 253. Defendant has acknowledged that Ms. Moore has "little difficulty" making out a prima facie case of race discrimination. This stands to reason, since it concedes that Ms. Moore was qualified for promotion to the position of Senior Bankruptcy Analyst. Under these circumstances, the only question is whether Defendant's claimed reasons for refusing to promote Ms. Moore to the position, and selecting the white candidate instead, are the real reasons -- that is, whether they are pretextual.

Pretext can be shown in many ways. Any evidence which casts doubt on the believability of the asserted reason for the challenged employment decision, even if it does not directly contradict or disprove it, can create an issue of fact concerning pretext. **Buettner v. Arch Coal Sales, Co.**, 216 F.3d 707, 717 (8th Cir. 2000). Ms. Moore's evidence of pretext can be grouped and summarized in five categories. The categories must be considered, not in isolation, but in combination with each other in order to determine whether they create a reasonable inference of

race discrimination.  **Stacks v. Southwestern Bell Yellow Pages**, 27 F.3d 1316, 1327 (8th Cir. 1994); **Keathley v. Ameritech Corp.**, 187 F.3d 915, 925 (8th Cir. 1999).

1. Pre-selection

The relevant decisionmakers were John Church, the incumbent Senior Bankruptcy Analyst, and Nancy Gargula, the U.S. Trustee.  Both are white.  A jury could reasonably conclude that the non-selection of Ms. Moore, who is black, for the position of Senior Bankruptcy Analyst was the result of the pre-selection of Amy Carpenter, who is white, by Church and Gargula.  The evidence of pre-selection in this case is overwhelming.

Among other things, the evidence shows that (1) Ms. Carpenter was hired by Church and Gargula with the purpose of replacing Church when he retired, even though she had no bankruptcy experience at all while Ms. Moore had 18 years of such experience; (2) Ms. Carpenter was placed at the highest possible pay grade level (GS14) by Church and Gargula in order to ensure that she would qualify for the position when it opened up; (3) Ms. Carpenter was trained by Church in the duties and responsibilities of the position for a long period of time while Ms. Moore was not; (4) when Church retired, Gargula assigned his duties and responsibilities to Ms. Carpenter, without giving any consideration to Ms. Moore, but delayed in awarding the job to her so that she would have the requisite two years experience at the GS14 level; (5) Gargula wanted to promote Ms. Carpenter to the position without posting it but was told that she was required to do so under the civil service rules; (6) Gargula was visibly upset when she learned that Ms. Moore intended to apply for the position; (7) Gargula drafted the vacancy announcement so that she could more easily select Ms. Carpenter; and (8) Gargula's interview of Ms. Moore was a sham, as shown by the fact that she discouraged her from seeking the promotion and focused exclusively on her few weaknesses rather than her many strengths.

Federal appellate courts, including the Eighth Circuit, have held that evidence of pre-selection operates to discredit an employer's proffered justification for the challenged employment decision and generates a strong inference of unlawful discriminatory intent.  See, e.g., **Coble v. Hot Springs School Dist.**, 682 F.2d 721, 729 (8th Cir. 1992); **Goostree v. State of Tenn.**, 796 F.2d 854, 861 (6th Cir. 1986); **Banks v. The Travelers Companies**, 180 F.3d 358, 362 (2d Cir. 1999); **Krodel v. Young**, 748 F.2d 701, 709 (D.C. Cir. 1984).  This stands to reason, since if an employer offers allegedly legitimate reasons for its decision to choose a white candidate over a black candidate, while in reality it had already hand-picked and pre-selected the white candidate before the decision was even made, then it is clearly lying about its supposed reasons.  This is enough to allow a jury to infer racial discrimination.  **Reeves,** 120 S. Ct. at 2108 ("the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt").

It bears emphasis that the pre-selection of Ms. Carpenter for the position of Senior Bankruptcy Analyst violated Defendant's own internal personnel policies.  The federal government's merit service rules expressly prohibited Church and Gargula from "granting any preference or advantage not authorized by law, rule or regulations to any employee or applicant for employment . . . for the purpose of improving or injuring the prospects of any particular person for employment."  See 5 U.S.C. § 2303(b)(6).  Along the same lines, the staffing plan of the U.S. Trustee Program requires that all managers "ensure that no personal favoritism or pre-selection is involved in any . . . promotion action."  See Excepted Service Staffing Plan at E.1(a).  Defendant's deviation from its own personnel policy reinforces a finding of pretext in this case.  **Lake v. Yellow Transportation**, 596 F.3d 871, 875 (8th Cir. 2010); **Arnold v. Nursing & Rehab. Ctr.**, 471 F.3d 843, 847 (8th Cir. 2006).

## 2. Qualifications

This is not a case in which the plaintiff was equally qualified to, or only slightly better qualified than, the successful candidate for a promotion.  This is a case in which Ms. Moore was *substantially* better qualified than Ms. Carpenter to fill the position of Senior Bankruptcy Analyst.  **Peterson v. Scott County**, 406 F.3d 515, 523 (8th Cir. 2005).

Region 13's Senior Bankruptcy Analyst has three roles: (1) bankruptcy analyst, (2) standing trustee coordinator, and (3) field exam and audit coordinator.  Each will be discussed in turn.

Ms. Moore had been a Bankruptcy Analyst for almost two decades when she was denied the promotion.  She had been performing complex work, for which she consistently received overall excellent ratings, which included handling the largest and most complicated Chapter 11 reorganization cases and identifying and correcting fraud and abuse in the bankruptcy process.  By contrast, Ms. Carpenter had only two years of experience as a Bankruptcy Analyst, most of it doing routine work which by reason of her inexperience she needed training to perform.  Defendant has suggested that Ms. Moore's long tenure as a Bankruptcy Analyst is irrelevant but the evidence shows that it would have enabled her to capably perform virtually all aspects of the job of Senior Bankruptcy Analyst.  Moreover, courts have recognized that value to the employer, which is the goal of any promotion decision, is a function of years of competent service and experience in the relevant field of expertise.  **Hudson v. Normandy School Dist.**, 953 F.2d 410, 413 (8th Cir. 1992); **Banks**, 180 F.3d at 362.

Defendant has suggested that the duties of a standing trustee coordinator are a critical component of the position of Senior Bankruptcy Analyst.  In reality they are not as shown by the fact that (1) they were not even mentioned in the job description or job announcement and (2)

they were performed by a Bankruptcy Analyst, rather than a Senior Bankruptcy Analyst, in another location within Gargula's jurisdiction.

At any rate, Ms. Moore was more qualified to perform the duties of a standing trustee coordinator because she had been performing similar duties during her whole career. She regularly did Chapter 12 field examinations, assisted with performance evaluations of Chapter 12 trustees, and collected and reviewed quarterly reports from Chapter 12 trustees. She reviewed monthly operating reports concerning Chapter 11 debtors and knew and understood how to review and utilize the budget and annual reports of trustees. She has regularly conducted trustee oversight, including training them and answering questions from them, throughout her tenure as a Bankruptcy Analyst. In short, Ms. Moore possessed the necessary skill set to perform the duties of a standing trustee coordinator.

In contrast, Ms. Carpenter was only exposed to these duties for less than two years and, prior to joining the U.S. Trustee Program, had no experience in trustee oversight, monitoring their monthly operating reports, or reviewing their budgets or annual reports. She had no bankruptcy experience at all.

Finally, Ms. Moore was better qualified with regard to the field examination and audit coordinator duties of the Senior Bankruptcy Analyst. She had two years of experience as an auditor before joining the U.S. Trustee Program while Ms. Carpenter had only one and a half years of such experience. More importantly, Ms. Moore had performed 40 to 45 field examinations of trustees, which is an auditing function, while Ms. Carpenter had performed only one. Indeed, Ms. Moore reviewed the field examinations conducted by other Bankruptcy Analysts. She also reviewed audit reports, followed up on problems discovered in them, and recommended whether audits should be closed.

### 3. False Explanations

Defendant has offered multiple false or contrived explanations for passing over Ms. Moore for the promotion to Senior Bankruptcy Analyst. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." **Reeves**, 530 U.S. at 147.

Defendant has contended, for example, that Ms. Moore did not really want the job because it was in Kansas City. This is implausible. After all, she applied for the position and, when she did not get it, she challenged the decision as improper. Moreover, Ms. Moore made it clear to everybody concerned -- her supervisor, the Administrative Officer, and Gargula herself -- that she knew the position was in Kansas City and was willing to relocate there in order to get the promotion. Defendant's argument assumes what is unreasonable: that it knew better than Ms. Moore what she wanted.

Defendant has also erred in suggesting that Ms. Moore had a poor interview with Gargula. It points out that she said that understanding Chapter 13 reports is not "rocket science." Read in context, which is to say fairly, the remark was not improper. Ms. Moore told Gargula "I'm familiar with the reports, I understand them, and they're simple reports. It's not rocket science." Equally innocuous was Ms. Moore's remark that she does not like rules without a good reason or benefit. Ms. Moore never suggested that she would refuse to obey such rules and the record is void of any evidence that she has ever refused to obey any rule, good or bad, during her long and successful career with the U.S. Trustee Program.

Even if Ms. Moore was somewhat defensive during the interview, it was understandable under the circumstances. She could tell from the questions that Gargula posed to her, as well as the fact that Gargula had been grooming Ms. Carpenter for the position of Senior Bankruptcy

Analyst, that the interview was an empty formality. It has long been settled under the labor and civil rights laws that an employer cannot provoke an employee by its own unlawful conduct and then rely on the employee's response as a basis for taking adverse action against her. See **Ramerez v. Glass**, 615 F.2d 163, 169-170 (5th Cir. 1980); **O'Connor v. Peru State College**, 781 F.2d 632, 637 (8th Cir. 1986).

Defendant has complained that Ms. Moore never sought any training from Church. But she did not know that Church was training Carpenter to be his replacement until shortly before her interview with Gargula; Church he did not consult with her before he hired Carpenter as his successor. He just did it; it was fait accompli. Moreover, Church never considered Ms. Moore for the training, even though she was the logical choice for it because she was far better qualified than Carpenter to become a Senior Bankruptcy Analyst. Indeed, it is doubtful that Ms. Moore needed any training at all in order to perform the duties of Senior Bankruptcy Analyst because she had been performing almost all of them anyway for fifteen years.

### 4. Inconsistencies

Defendant's managers have demonstrated considerable confusion about who did what in connection with the denial of the promotion to Ms. Moore. For example, Gargula has claimed that she never pre-selected Ms. Carpenter for the position of Senior Bankruptcy Analyst. However, her e-mails at the time convincingly show that she did. In addition, Ms. Gargula and Cindy Beck, a Human Resource Director, have offered discrepant accounts of who set the parameters for the vacancy announcement for the position of Senior Bankruptcy Analyst.

Courts have held that a jury can infer pretext from an employer's shifting or inconsistent explanations for its conduct. **Lake**, 596 F.3d at 875; **Estes v. Dick Smith Ford**, 856 F.2d 1097, 1101 (8th Cir. 1988); **Edwards v. U.S. Postal Service**, 909 F.2d 320, 324 (8th Cir. 1990).

## 5. Treatment of Other Employees

Evidence that an employer has discriminated against the plaintiff in other aspects of her employment, or against other employees who have not actually sued the employer, is relevant and admissible in an employment discrimination case. **Denesha v. Farmers Ins. Exchange**, 161 F.3d 491, 500 (8th Cir. 2000); **LaChair v. City of St. Paul**, 187 F3d 824, 828 (8th Cir. 1999).

Here, there is evidence that Church treated another black Bankruptcy Analyst, Tonja Nero-Britt, unfavorably by interfering with her in-grade progression and opposing her promotion to Bankruptcy Analyst. There is also evidence that Gargula treated Ms. Moore and other black employees less favorably than white employees, including Carpenter, with regard to the distribution of incentive pay awards.

## II. REMEDIES

Employees who are victims of discrimination are entitled to "the most complete relief possible" to remedy the effects of the employer's unlawful conduct. **Tadlock v. Powell**, 291 F.3d 541, 548 (8th Cir. 2002). Defendant bears the burden of proof on remedial issues. "Once the Plaintiff . . . has proven her case and established what she contends to be her damages, the burden of going forth to mitigate the liability or to rebut the damage claim rests with Defendant." **DiSalvo v. Chamber of Commerce**, 568 F.2d 593, 598 (8th Cir. 1978); see also **Curtis v. Electronics & Space Corp.**, 113 F.3d 1498, 1505 (8th Cir. 1997).

A verdict in favor of Ms. Moore entitles her to damages for back pay and benefits until the date of trial, plus interest, as well as instatement to the position denied her or, alternatively, front pay and benefits in lieu of instatement. 42 U.S.C. § 2000e-5(g); 42 U.S.C. § 1981 a(b); **King v. Staley**, 849 F.2d 1143, 1144-45 (8th Cir. 1988). Ms. Moore is also entitled to compensation for the emotional distress she suffered as a result of Defendant's conduct. 42

U.S.C. § 1981a(b)(3); **West v. Gibson**, 527 U.S. 212 (1999). It is well-established that a plaintiff's own testimony, along with the particular circumstances of the case, is sufficient to support an award of emotional distress damages under Title VII. Expert testimony is not necessary. **Sheriff v. Midwest Health Partners**, 619 F.3d 923, 932 (8th Cir. 2010).

With any finding of unlawful discrimination, Ms. Moore will be entitled to an award of reasonable attorneys' fees and costs. 42 U.S.C. § 2000e-5(k).


SEDEY HARPER, P.C.
Attorneys for Plaintiff

*/s/ Jessica Scales*
_____
Jessica Scales, #64136
2711 Clifton Avenue
St. Louis, MO 63139
314/773-3566
314/773-3615 (fax)

The undersigned hereby certifies that a true copy of the above was served on October 28, 2014, via the Court's electronic notification system to:


Christina B. Moore    #53917-MO
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-3991
Fax: (314) 539-2777
Christina.moore@usdoj.gov
Attorneys for Defendant

*/s/ Jessica M. Scales*
_____