TRANSCRIPT OF PROCEEDINGS 5/8/2012 & 5/9/2012

Page 1

```
 1    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
 2              St. Louis District Office
 3
 4
 5
 6
 7    IN RE: CYNTHIA MOORE vs. DEPARTMENT OF JUSTICE
 8
 9          EEOC CASE NO. 560-2010-00168X
10          AGENCY NO. OBD-2008-00632
11
12
13
14
15           TRANSCRIPT OF PROCEEDINGS
16                MAY 8 & 9, 2012
17
18
19
20
21
22        (Hearing start time: 8:10 a.m.)
23
24
25
```

Page 2

```
 1                INDEX OF WITNESSES
 2
 3  CYNTHIA MOORE
 4  Direct Examination by Mr. Garfield          Page   9
 5  Cross Examination by Mr. Bridenhagen        Page  72
 6  Redirect Examination by Mr. Garfield        Page  77
 7  Rebuttal Direct Examination by Mr. Garfield Page 390
 8  CINDY BECK
 9  Direct Examination by Mr. Garfield          Page  78
10  Cross Examination by Mr. Bridenhagen        Page  98
11  Redirect Examination by Mr. Garfield        Page 106
12  Rebuttal Examination by Mr. Bridenhagen     Page 142
13  Rebuttal Examination by Mr. Garfield        Page 145
14  ROBERT NEWTON
15  Direct Examination by Mr. Mr. Garfield      Page 110
16  Cross Examination by Mr. Bridenhagen        Page 137
17  Redirect Examination by Mr. Garfield        Page 141
18  MARTHA HALLOWELL
19  Direct Examination by Mr. Bridenhagen       Page 146
20  Cross Examination by Mr. Garfield           Page 159
21  JOHN CHURCH
22  Direct Examination by Mr. Bridenhagen       Page 166
23  Cross Examination by Mr. Garfield           Page 196
24  Redirect Examination by Mr. Bridenhagen     Page 219
25  Recross Examination by Mr. Garfield         Page 221
```

Page 3

```
 1  TONJA NERO-BRITT
 2  Direct Examination by Mr. Garfield              Page 223
 3  Cross Examination by Mr. Bridenhagen            Page 237
 4  DANIEL CASAMATTA
 5  Direct Examination by Mr. Garfield              Page 240
 6  Cross Examination by Mr. Bridenhagen            Page 272
 7  Redirect Examination by Mr. Garfield            Page 282
 8  Recross Examination by Mr. Bridenhagen          Page 290
 9  Further Redirect Examination by Mr. Garfield    Page 292
10  NANCY GARGULA
11  Direct Examination by Mr. Garfield              Page 293
12  Cross Examination by Mr. Bridenhagen            Page 357
13  Redirect Examination by Mr. Garfield            Page 384
14
15
16  (Day one is page 7 through page 237. Day two is page 238
17   through page 393.)
```

Page 4

```
 1                    EXHIBITS
 2
 3  Complainant's Exhibit C-3        Page  33
 4  Complainant's Exhibit C-6        Page  81
 5  Complainant's Exhibit C-8        Page  39
 6  Complainant's Exhibit C-9        Page  57
 7  Complainant's Exhibit C-16       Page  69
 8  Complainant's Exhibit C-20       Page  63
 9  Complainant's Exhibit C-21       Page  65
10  Complainant's Exhibit C-22       Page 195
11  Complainant's Exhibit C-25       Page  64
12  Complainant's Exhibit C-26       Page  33
13  Complainant's Exhibit C-27       Page  93
14
15  Agency Exhibit 4                 Page 155
16  Agency Exhibit 6                 Page 100
17  Agency Exhibit 7                 Page 156
18  Agency Exhibit 8                 Page 121
19  Agency Exhibit 9                 Page 227
20
21  (All exhibits were retained by Judge Niehoff. The index
22   below reflects Agency or Complainant exhibits that were
23   identified during the proceeding).
```

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com    Phone: 1.800.280.3376

**EXHIBIT 1**

Page 109

1 in field offices?
2     JUDGE NIEHOFF: District offices.
3     Q  (By Mr. Garfield) Do you recall what the
4  justification was for locating them in those --
5     A  Do I know what the justification was?
6     Q  Yeah.
7     A  No, I don't. That would have been something
8  between -- a decision that would have been made between
9  senior management in the program and the United States
10 Trustee at the time.
11    Q  You would not have been --
12    A  No, I would not have been involved.
13    Q  That would be outside your bailiwick?
14    A  Right.
15    MR. GARFIELD: Okay. That's it.
16    JUDGE NIEHOFF: Can we excuse this witness?
17    MR. BRIDENHAGEN: Excused.
18    JUDGE NIEHOFF: I'm assuming she's going to be
19 returning to D.C., so --
20    THE WITNESS: Yes.
21    JUDGE NIEHOFF: Is there any reason why you think
22 we might need her?
23    MR. GARFIELD: Only if I -- what if I bring
24 something in that shows I submitted the exhibit.
25    JUDGE NIEHOFF: Then you can submit the exhibit.

Page 110

1  She's already testified regarding the question.
2     MR. GARFIELD: Okay. All right.
3     JUDGE NIEHOFF: Thank you.
4         (Witness excused)
5     JUDGE NIEHOFF: Who's next?
6     MR. GARFIELD: Mr. Newton.
7     JUDGE NIEHOFF: So it's 11:30 now. We can go off
8  the record.
9         (Whereupon there was a discussion off the record.)
10    JUDGE NIEHOFF: Would the court reporter please
11 swear in the witness.
12         ROBERT NEWTON,
13 of lawful age, being produced, sworn and examined on behalf
14 of the Claimant, Cynthia Moore, states and says:
15
16    JUDGE NIEHOFF: Please state your name.
17    THE WITNESS: Robert Newton.
18    JUDGE NIEHOFF: And please state your race
19 for the record.
20    THE WITNESS: Caucasian.
21    JUDGE NIEHOFF: Go ahead, Mr. Garfield.
22         DIRECT EXAMINATION
23 BY MR. GARFIELD:
24    Q  Mr. Newton, what's your current position?
25    A  I'm field support officer for the National Archives

Page 111

1  and Records Administration in Kansas City.
2     Q  What is your grade?
3     A  GS-14.
4     Q  And how long have you been in that position?
5     A  Been in that position now for fourteen months.
6     Q  I'm sorry. I didn't hear you.
7     A  Fourteen months.
8     Q  Fourteen months, okay. Would that be somewhere
9  around February of 2011?
10    A  That's correct.
11    Q  Or thereabouts?
12    JUDGE NIEHOFF: And what was your position in 2008
13 and 2009?
14    A  2008 and 2009 I was the Admin Officer for the U.S.
15 Trustee Program in Kansas City.
16    Q  (By Mr. Garfield) And were you also Admin Officer
17 for Region 12?
18    A  Yes.
19    Q  So you served two regions?
20    A  Region 12 and 13.
21    Q  And was who was your supervisor for Region 13?
22    A  Region 13 would be Nancy Gargula.
23    Q  And she was the U.S. Trustee for the region,
24 right?
25    A  Yes, she was.

Page 112

1     Q  And what was the grade of your position?
2     A  I was brought in as a GS-11 and when I was offered
3  or given the second region, it was a temporary promotion to
4  GS-12. It was renewed on an annual basis.
5     Q  And when you took the position with National
6  Archives in Kansas City, was that originally as a fourteen or
7  was it --
8     A  It was a GS-13 promotion, potential to fourteen and
9  it was recently elevated to fourteen when I hit the one year
10 time and grade as a thirteen.
11    Q  So what were your responsibilities when you were
12 the regional administrative officer for Region 13?
13    A  When I was the Regional Administrative Officer I
14 was in charge of Human Resource functions, finance, budget,
15 facilities, safety, security. I was also a contracting
16 officer for the U.S. Trustee Program.
17    Q  What were your responsibilities with regard --
18 never mind.
19       What was your responsibility with regard to
20 recruitment actions?
21    A  Recruitment actions. If we had a local recruitment
22 action within the region, I would coordinate with the Human
23 Resource specialist that's assigned to our region and
24 Executive Office in Washington, D.C. I would actually by
25 direction of the U.S. Trustee put together the standard

**Page 137**

1 A Yes.
2 Q And what was that situation?
3 A Region 12 the senior analyst works in Cedar Rapids;
4 the region office is in Minneapolis.
5   MR. GARFIELD: No more questions.
6              CROSS EXAMINATION
7 BY MR. BRIDENHAGEN:
8 Q Just a couple questions. You just testified that
9 you had concerns that Nancy Gargula made decisions for awards
10 based on race; is that correct?
11 A No, I don't think she made the decisions based on
12 race. I think she made the decisions on the overall amount
13 of money that she had available and she took into effect what
14 the performance rating was.
15 Q Performance rating and what else?
16 A Their performance rating, grade levels and their
17 billet.
18 Q Do you have any reason to believe that any
19 decisions made by Paul Randolph concerning promotions and
20 awards were in any way influenced by race?
21 A No, I do not.
22 Q And what race is Mr. Randolph?
23 A He's African American.
24   MR. BRIDENHAGEN: No further questions.
25   JUDGE NIEHOFF: Anything else, Mr. Garfield?

**Page 138**

1   MR. GARFIELD: No. Are you done?
2   MR. BRIDENHAGEN: Wait a minute. I'm sorry. Let
3 me ask one more question.
4 Q (By Mr. Bridenhagen) How did you get along with
5 Miss Gargula?
6 A The relationship with Miss Gargula was
7 deteriorating to the point that I sought another position at
8 the National Archives where I work now. My involvement in
9 this case, my position, my performance evaluation was
10 beginning to decline. So it was -- the way we discussed
11 things quite at times became no discussion at all. It was
12 her way; she would tell me what to do. So quite frankly it
13 is -- I would -- I'm no longer at the U.S. Trustees Program
14 because our relationship had declined to that point.
15 Q Were you ever the subject of any disciplinary
16 action?
17 A No, I was not.
18 Q Did Miss Gargula verbally reprimand you on one
19 occasion?
20 A On one occasion she called in the middle of the
21 afternoon with Cindy Beck on the line and she talked to me
22 about my communication and that's where it stayed.
23 Q Your communication about what and with whom?
24 A Communication with Miss Carpenter.
25 Q And what communication was she particularly

**Page 139**

1 concerned about?
2 A When Miss Carpenter had come down to my office in
3 the afternoon and we had had a conversation, that Miss
4 Carpenter had asked some questions about the billet and
5 future thoughts of the program and I believe that discussion
6 did not stay in a good context and she went back to Miss
7 Gargula on it.
8 Q Did Miss Gargula reprimand you for discussing Miss
9 Moore's EEO complaint with Miss Carpenter?
10 A I was never reprimanded at any time.
11 Q Did you she give you a verbal --
12 A She did not.
13 Q What was discussed about your discussion with Miss
14 Moore?
15 A She pointed --
16 Q Concerning --
17 A She told me not to discuss it with anyone.
18 Q And had you discussed it with anyone?
19 A No, I had not.
20 Q And not with Miss Carpenter?
21 A No, I had not.
22 Q And did there come a point in time when you went in
23 Miss Carpenter's office and apologized to her?
24 A I did for upsetting her, but nothing further than
25 that. The regional officer there, too, Mr. Bridenhagen, has

**Page 140**

1 a history of this kind of activity. So, you know, what I
2 went through and what you're asking me specifically not only
3 happened to me, but happened to several employees and it's
4 still ongoing in the office. That's why I left.
5   MR. BRIDENHAGEN: I don't have any further
6 questions.
7   JUDGE NIEHOFF: What did you say to Miss Carpenter?
8 What was the discussion about?
9 A Ma'am, she came down and asked a few questions.
10 She was then the regional analyst, I was the regional admin
11 officer. The regional office is located with the Kansas City
12 office. We had a general discussion about some things that
13 were in the office and I don't quite -- I don't quite
14 remember the specific topic until later I was on the phone
15 with Nancy and Cindy being told not to talk about any work
16 related business with any of the other employees. So --
17   JUDGE NIEHOFF: That's what they told you, don't
18 talk about anything in the office with other employees?
19 A That's correct.
20   JUDGE NIEHOFF: Or did they specifically mention
21 any names?
22 A Very specific, ma'am. I was not to speak about any
23 of the administrative business with any of the other
24 employees other than Miss Gargula.
25   JUDGE NIEHOFF: So no names were mentioned